FILED
2020 Oct-06  AM 10:54
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| JOHN ALLEN GREENE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 5:19-cv-00814-SGC |
| SOCIAL SECURITY | ) | |
| ADMINISTRATION, Commissioner, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION[1]

The plaintiff, John Allen Greene, appeals from the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his application for Disability Insurance Benefits ("DIB"). Greene timely pursued and exhausted his administrative remedies, and the Commissioner's decision is ripe for review pursuant to 42 U.S.C §§ 405(g) and 1383(c)(3). For the reasons discussed below, the Commissioner's decision is due to be affirmed.

### I. Procedural History

Greene has a high school education and has previously been employed as a furnace operator and a production worker. (Tr. at 21). In his application for DIB, Greene alleged he became disabled on March 1, 2013, as a result of a variety of

---

[1] The parties have consented to the exercise of full dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 7).

physical and mental impairments. (*Id.* at 15, 21). After his claim was denied, Greene requested a hearing before an administrative law judge ("ALJ"). (*Id.*). Following a hearing, the ALJ denied Greene's claim. (*Id.* at 15-30). Greene was 49 years old when the ALJ issued his decision. (*Id.* at 28, 30). After the Appeals Council denied review of the ALJ's decision (*id.* at 1), that decision became the final decision of the Commissioner, *see Frye v. Massanari*, 209 F. Supp. 2d 1246, 1251 (N.D. Ala. 2001) (citing *Falge v. Apfel*, 150 F.3d 1320, 1322 (11th Cir. 1998)). Thereafter, Greene commenced this action. (Doc. 1).

## II. Statutory and Regulatory Framework

To establish eligibility for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 416(i)(1)(A), 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a). Furthermore, a claimant must show he was disabled between his alleged initial onset date and his date last insured. *Mason v. Comm'r of Soc. Sec.*, 430 F. App'x 830, 831 (11th Cir. 2011) (citing *Moore v. Barnhart*, 405 F.3d 1209, 1211 (11th Cir. 2005); *Demande v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979)). The Social Security Administration ("SSA") employs a five-step sequential analysis to determine an individual's eligibility for disability benefits. 20 C.F.R. §

404.1520(a)(4).

First, the Commissioner must determine whether the claimant is engaged in "substantial gainful activity." *Id.* at § 404.1520(a)(4)(i). If the claimant is engaged in substantial gainful activity, the Commissioner will find the claimant is not disabled. *Id.* at § 404.1520(a)(4)(i) and (b). At the first step, the ALJ determined Greene last met the Social Security Administration's insured status requirements on December 31, 2017, and had not engaged in substantial gainful activity between the alleged onset date of his disability and his date last insured. (Tr. at 18).

If the claimant is not engaged in substantial gainful activity, the Commissioner must next determine whether the claimant suffers from a severe physical or mental impairment or combination of impairments that has lasted or is expected to last for a continuous period of at least twelve months. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the Commissioner will find the claimant is not disabled. *Id.* at § 404.1520(a)(4)(ii) and (c). At the second step, the ALJ determined that during the relevant period Greene had the following severe impairments: history of C5, C6, and C7 fusion; osteoarthritis; fibromyalgia; chronic pain syndrome; lumbosacral spondylosis; status post lymph node excision; history of chronic obstructive pulmonary disease; asthma; tobacco dependence; opioid dependence; depression; and unspecified anxiety. (Tr. at 18).

3

If the claimant has a severe impairment or combination of impairments, the Commissioner must then determine whether the impairment or combination of impairments meets or equals one of the "Listings" found in 20 C.F.R. Part 404, Subpart P, Appendix 1.   20 C.F.R. § 404.1520(a)(4)(iii).   If the claimant's impairment or combination of impairments meets or equals one of the Listings, the Commissioner will find the claimant is disabled. *Id.* at § 404.1520(a)(4)(iii) and (d). At the third step, the ALJ determined that during the relevant period Greene did not have an impairment or combination of impairments that meets or medically equals the severity of one of the Listings.  (Tr. at 18-20).

If the claimant's impairment or combination of impairments does not meet or equal one of the Listings, the Commissioner must determine the claimant's residual functional capacity ("RFC") before proceeding to the fourth step.   20 C.F.R. § 404.1520(e).  At the fourth step, the Commissioner will compare an assessment of the claimant's RFC with the physical and mental demands of the claimant's past relevant work.  *Id.* at § 404.1520(a)(4)(iv) and (e).  If the claimant is capable of performing his past relevant work, the Commissioner will find the claimant is not disabled.  *Id.* at § 404.1520(a)(4)(iv).

Before proceeding to the fourth step, the ALJ determined that during the relevant period Greene had the RFC to perform a limited range of light work.  (Tr.

at 20-28).[2]  At the fourth step, the ALJ determined that during the relevant period Greene was not able to perform his past relevant work.  (*Id.* at 32).

If the claimant is unable to perform his past relevant work, the Commissioner must finally determine whether the claimant is capable of performing other work that exists in substantial numbers in the national economy in light of the claimant's RFC, age, education, and work experience.  20 C.F.R. § 404.1520(a)(4)(v) and (g)(1).  If the claimant is capable of performing other work, the Commissioner will find the claimant is not disabled.  *Id.*  at § 404.1520(a)(4)(v) and (g)(1).  If the claimant is not capable of performing other work, the Commissioner will find the claimant is disabled.  *Id.* at § 404.1520(a)(4)(v) and (g)(1).

At the fifth step, considering Greene's age, education, work experience, and RFC, the ALJ determined there were jobs existing in significant numbers in the national economy, such as those of laundry worker, photocopy operator, and product marker, that Greene could perform through his date last insured.  (Tr. at 29-30).  Therefore, the ALJ concluded Greene was not disabled during the relevant period.  (*Id.* at 30).

---

[2] Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and may require "a good deal of walking or standing . . . or . . . involve[] sitting most of the time with some pushing and pulling of arm or leg controls."  20 C.F.R. § 404.1567(b).

### III. Standard of Review

Review of the Commissioner's decision is limited to a determination of whether that decision is supported by substantial evidence and whether the Commissioner applied correct legal standards. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). A district court must review the Commissioner's findings of fact with deference and may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007); *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Rather, a district court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (internal citations omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.* A district court must uphold factual findings supported by substantial evidence, even if the preponderance of the evidence is against those findings. *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

A district court reviews the Commissioner's legal conclusions *de novo*. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). "The [Commissioner's] failure to

apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## IV. Discussion

On appeal, Greene argues the ALJ erred by: (1) determining his Meniere's disease, narcolepsy, hip problems, and borderline personality disorder were non-severe impairments; (2) assigning little-to-no weight to a form completed by Marion Ruffing, a Licensed Professional Counselor and Licensed Mental Health Counselor, and little weight to a "Comprehensive Vocational Assessment" performed by Anne Herrington Darnell, a Licensed Professional Counselor and Certified Rehabilitation Counselor; and (3) discrediting his testimony regarding his subjective symptoms. (Docs. 11, 13).

### A. Non-Severe Impairments

Step two of the sequential evaluation undertaken by an ALJ serves as a "filter" or "screen" to weed out claims involving *no* severe impairment or combination of impairments. *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987); *Stratton v. Bowen*, 827 F.2d 1447, 1452, 1452 n.9 (11th Cir. 1987). "[T]he finding of *any* severe impairment . . . is enough to satisfy the requirement of step two." *Jamison*, 814 F.2d at 588 (emphasis added); *see also Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 951 (11th Cir. 2014) ("Based on our precedent and the

regulations . . . it is apparent that there is no need for an ALJ to identify every severe impairment at step two.").  However, if a case advances beyond step two, an ALJ must consider all impairments, severe or not, at later steps in the sequential evaluation.  *Tuggerson-Brown*, 572 F. App'x at 951; *Gray v. Comm'r of Soc. Sec.*, 550 F. App'x 850, 853 (11th Cir. 2013) (citing *Bowen v. Heckler*, 748 F.2d 629, 634-35 (11th Cir. 1984)).  Accordingly, where an ALJ commits error at step two, the error is harmless, provided the ALJ considers all impairments, severe or not, at later steps of the sequential evaluation.  *See, e.g., Tuggerson-Brown*, 572 F. App'x at 951-52 (holding claimant could not demonstrate error where record demonstrated ALJ considered severe and non-severe impairments after step two of sequential evaluation); *Gray*, 550 F. App'x at 853-54 (holding any error in determining at step two that claimant's cervical spine impairment was not severe was harmless because elsewhere in sequential evaluation ALJ specifically considered and discussed symptoms claimant allegedly experienced because of that impairment); *Delia v. Comm'r of Soc. Sec.*, 433 F. App'x 885, 887 (11th Cir. 2011) (holding that while ALJ erred in determining claimant's mental impairments were not severe, error was harmless because ALJ considered claimant's mental impairments at steps three, four, and five); *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 824-25 (11th Cir. 2010) (holding any error in failing to indicate severity of claimant's chronic back pain at step two was harmless because at step three ALJ discussed in detail claimant's

testimony and medical history, which included pain complaints).

Here, any error the AJL committed by failing to identify Greene's Meniere's disease, narcolepsy, hip problems, and borderline personality disorder as severe impairments at step two is harmless because the ALJ considered these impairments at later steps of the sequential evaluation.

The ALJ stated he evaluated whether Greene had an "impairment or combination of impairments" that met or equaled a Listing and considered "all symptoms" in determining Greene's RFC. (Tr. at 18-19, 21). "Under [Eleventh Circuit] precedent, those statements are enough to demonstrate that the ALJ considered all necessary evidence." *Tuggerson-Brown*, 572 F. App'x at 952 (citing *Wilson v. Barnhart*, 284 F.3d 1219, 1224-25 (11th Cir. 2002)).

Consideration of Greene's Meniere's disease is further reflected in the ALJ's discussion of the diagnosis and associated alleged symptoms in that portion of his opinion addressing Greene's RFC. (Tr. at 23). Similarly, in formulating Greene's RFC, the ALJ explicitly referenced Greene's narcolepsy diagnosis and discussed the treatment Greene received for various types of pain, including pain associated with his hips. (*Id.* at 22-23).

Although the ALJ did not refer to Greene's borderline personality disorder diagnosis by name, he did explicitly consider the symptoms for which Greene sought and received mental health treatment and cite to those portions of the administrative

record at which Greene's mental health treatment records, including those containing a diagnosis of borderline personality disorder, can be found. (*Id.* at 19-20, 25). This is true both for step three of the sequential analysis and the RFC assessment. (*Id.* at 19-20, 23). Moreover, in evaluating Greene's RFC, the ALJ explicitly considered a form that, in turn, explicitly references Greene's borderline personality diagnosis and discusses the symptoms associated with that diagnosis. (*Id.* at 24, 2441-45). This type of indirect discussion has been deemed sufficient to demonstrate an ALJ considered a claimant's impairments. *See Alfarano v. Saul*, 2020 WL 4808746, at *4 (M.D. Fla. Aug. 1, 2020), *report and recommendation adopted sub nom. Alfarano v. Comm'r of Soc. Sec.*, 2020 WL 4785455 (M.D. Fla. Aug. 18, 2020) (holding record sufficiently demonstrated ALJ properly assessed plaintiff's impairments, even those not specifically found to be severe, where ALJ cited medical records that collectively referenced may of the impairments plaintiff claimed ALJ failed to address).

Because the record demonstrates the ALJ considered Greene's Meniere's disease, narcolepsy, hip problems, and borderline personality disorder after step two of the sequential analysis, any error the ALJ committed by failing to identify these impairments as severe is harmless. *See, e.g.*, *Tuggerson-Brown*, 572 F. App'x at 951-52 (discussed *supra*); *Gray*, 550 F. App'x at 853-54 (same); *Delia*, 433 F. App'x at 887 (same); *Heatly*, 382 F. App'x at 824-25(same).

**B. Weight Assigned to Opinions Offered by Ruffing and Darnell**

Marion Ruffing completed a form on December 8, 2017, opining Greene has "extreme" limitations in a variety of areas of mental functioning. (Tr. at 2441-45). The form defines "extreme" as indicating the inability to function in an area independently, appropriately, effectively, and on a sustained basis. (*Id.* at 2441). In her "Comprehensive Vocational Assessment" dated July 24, 2015, Anne Herrington Darnell offered the opinion Greene "has a Vocational Disability Rating or Loss of Earning Capacity of 100%." (*Id.* at 890-94). The ALJ assigned little-to-no weight to Ruffing's opinions and little weight to Darnell's opinion. (*Id.* at 24-25, 27).

Neither Ruffing nor Darnell was an "acceptable medical source" for purposes of Greene's disability determination. *See* SSR 06-03p (identifying an "acceptable medical source").[3] While their opinions were due consideration by the ALJ, they were not entitled to special significance. *See id.* (discussing consideration afforded either opinion of medical source who is not an "acceptable medical source" or opinion of non-medical source, as contrasted with opinion of "acceptable medical source"); *Farnsworth v. Soc. Sec. Admin.*, 636 F. App'x 776, 783-84 (11th Cir. 2016)

---

[3] The rules regarding the evaluation of medical evidence were amended by 82 Fed. Reg. 5844 (January 18, 2017). *See also* 82 Fed. Reg. 15132 (March 27, 2017) (amending and correcting the final rules published at 82 Fed. Reg. 5844). This amendment included the rescission of SSR 06-03p. *See* 82 Fed. Reg. 5844. The amended rules apply only to claims filed on or after March 27, 2017. *See id.* Because Greene's claim was filed on July 31, 2015, the undersigned reviews the denial of his claim under the pre-amendment versions of the rules regarding the evaluation of medical evidence, including SSR 06-03p.

11

(holding ALJ was not required to give opinions of mental health counselors, neither of whom was an "acceptable medical source," controlling weight over opinion of "acceptable medical source").  The ALJ correctly noted neither Ruffing nor Darnell was an "acceptable medical source," nonetheless considered the opinions offered by each, and articulated valid reasons, supported by substantial evidence, for discounting the opinions.  (Tr. at 24-25, 27).[4]

As a justification for discounting Ruffing's opinions regarding Greene's mental functioning, the ALJ noted the opinions amounted to a determination of Greene's mental residual functional capacity, which is a determination solely for the Commissioner to make.  (*Id.* at 25).  Similarly, the ALJ construed Darnell's opinion as equivalent to a determination Greene is incapable of working and noted such determination is one solely for the Commissioner to make.  (*Id.* at 27).  The ALJ's interpretation of the opinions offered by Ruffing and Darnell is reasonable, and his decision to discount those opinions based on that interpretation is supported by the law applicable to Social Security proceedings.  *See Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 834 (11th Cir. 2011) ("A doctor's opinion on dispositive issues reserved to the Commissioner, such as whether the claimant is disabled or unable to

---

[4] The ALJ referred to Ruffing as a "non-medical source" and to Darnell as "not [a] medical source." (Tr. at 24, 27).  Technically, Ruffing and Darnell each would be considered a medical source other than an "acceptable medical source," rather than a non-medical source.  *See* SSR 06-03p. However, this is a distinction without a difference for purposes of this review because the ALJ evaluated the opinions offered by Ruffing and Darnell using criteria equally applicable to the opinions of "other medical sources" and "non-medical sources."  *See id.*

work, is excluded from the definition of a medical opinion and is not given special weight, even if it is offered by a treating source, but the ALJ should still consider the opinion.") (citing 20 C.F.R. § 404.1527); *Kelly v. Comm'r of Soc. Sec.*, 401 F. App'x 403, 407 (11th Cir. 2010) (holding ALJ was permitted to give little weight to letter written by one of claimant's treating physicians because it arguably offered only a non-medical opinion on a matter reserved for the ALJ – namely, that claimant was unable to return to work); *Daniels v. Colvin*, 2015 WL 2095754, at *4 (M.D. Ala. May 5, 2015) ("[A] treating physician's opinions on legal issues that are reserved to the Commissioner are not considered medical opinions and are not entitled to any special weight," and those issues include opinions regarding a claimant's residual functional capacity.) (citing 20 C.F.R. § 404.1527).

As an additional justification for discounting Ruffing's opinions, the ALJ found the opinions were inconsistent with Greene's testimony and mental health treatment records.  (*Id.* at 24).  This was a valid reason for discounting Ruffing's opinions, *see* SSR 06-03p (identifying consistency of opinion with other evidence as factor to consider when weighing opinion of medical source that is not an "acceptable medical source"); *Szilvasi v. Comm'r, Soc. Sec. Admin.*, 555 F. App'x 898, 901 (11th Cir. 2014) (holding ALJ properly discounted opinions of medical source that was not an "acceptable medical source," where opinions were inconsistent with record evidence), and it is supported by substantial evidence.

Greene testified he is able to dress himself, cooks simple meals for himself using a microwave or stove, takes care of two dogs, pays bills online, drives to doctors' appointments and the pharmacy, shops for groceries, visits with a friend approximately three times each week, and talks to his mother on the phone approximately twice each week.  (Tr. at 46-49, 76, 78-79, 264-65, 267).  This testimony is not consistent with the extreme limitations in mental functioning to which Ruffing opined.

The administrative record indicates Ruffing began treating Greene in July 2016.  (*Id.* at 2548-49).  While Greene reported experiencing pain, feeling sad, and being unable to complete tasks, Ruffing's treatment notes indicate Greene consistently arrived on time, was dressed and groomed appropriately, had an appropriate and congruent mood and affect, made adequate eye contact throughout sessions, listened intently, readily offered feedback when questions were asked, and was open to therapeutic interventions.  (*Id.* at 2500-09, 2520-49).  Moreover, while Ruffing's treatment notes suggest the progress Greene made in therapy was inconsistent and, at times, stagnant (*id.* at 2500-09, 2520-49), the record from her session with Greene on November 27, 2017, less than two weeks before she completed the form at issue, indicates she referred Greene to a dialectical behavioral therapy group for his "newly diagnosed" borderline personality disorder and discussed with him ways it would help improve his daily functioning (*id.* at 2501).

14

In short, Ruffing's own records do not support the existence of the extreme limitations in mental functioning to which she opined.

For the foregoing reasons, the ALJ did not err in weighing the opinions offered by Ruffing and Darnell.

### C. Subjective Symptoms Testimony

A claimant may establish disability through testimony of pain or other subjective symptoms. *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991). To do so, he must satisfy the three-part "pain standard" by showing (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain or other subjective symptoms arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can reasonably be expected to give rise to the alleged pain or other subjective symptoms. *Id.*; *see also Taylor v. Acting Comm'r of Soc. Sec. Admin.*, 2019 WL 581548, at *2 (11th Cir. 2019) (citing *Dyer*, 395 F.3d at 1210); 20 C.F.R. § 404.1529; SSR 16-3p. A claimant's subjective testimony supported by medical evidence that satisfies the pain standard is sufficient to support a finding of disability. *Brown*, 921 F.2d at 1236 (citing *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987); *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986); *Landry v. Heckler*, 782 F.2d 1551, 1552 (11th Cir. 1986)).

An ALJ may discredit a claimant's testimony regarding his pain or other

subjective symptoms provided he or she clearly articulates explicit and adequate reasons for doing so.  *Brown*, 921 F.2d at 1236; *Taylor*, 2019 WL 581548, at \*2 (citing *Dyer*, 395 F.3d at 1210).  In evaluating a claimant's testimony and other statements regarding the intensity, persistence, and limiting effects of his symptoms, an ALJ considers all available evidence, including a claimant's daily activities; objective medical evidence; the type, dosage, and effectiveness of medication taken to alleviate symptoms; and treatment other than medication received to relieve symptoms.  20 C.F.R. § 404.1529(c).

Greene testified he experiences debilitating pain in his neck, shoulders, arms, hands, back, and hips, which causes him physical functional limitations and makes him unable to concentrate; experiences stuffiness and pain in his ears, accompanied by dizziness; is fatigued all of the time; has episodes where he is unable to prevent himself from falling asleep; experiences persistent diarrhea; has unstable relationships and trouble getting along with family and friends; is impulsive; experiences intense episodes of anxiety; and becomes reclusive when his depression worsens.  (Tr. at 50-75).  The ALJ determined that while Greene's medically determinable impairments could reasonably be expected to cause his alleged pain and other subjective symptoms, Greene's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical and other evidence of record.  (*Id.* at 22).

16

The ALJ articulated multiple reasons for discrediting Greene's testimony. First, the ALJ determined the pain and associated inability to concentrate Greene testified he experienced when using his hands and upper extremities, as well as the mental limitations to which Greene testified, were not consistent with activities endorsed by Greene.  (*Id.* at 25).  This was an appropriate reason to discount Greene's testimony regarding his pain and other subjective symptoms.  *See* 20 C.F.R. § 404.1529(c)(3)(i); SSR 16-3p; *Stacy v. Comm'r, Soc. Sec. Admin.*, 654 F. App'x 1005, 1011 (11th Cir. 2016) ("[The claimant's] daily activities, which included feeding his dogs and going to the store, did not automatically imply that he is not disabled, but that does not mean that the ALJ erred by considering those activities as evidence of his ability to work in light of the other evidence in the record.").

Moreover, it is supported by substantial evidence.  As stated, Greene testified his activities of daily living include using a microwave and the Internet, shopping, and driving.  Additionally, as noted by the ALJ, the record indicates that in December 2013, Greene was able to replace duct work on a house; in December 2016, Greene was able to climb on to a roof to unclog a gutter between thunderstorms and clean up after puppies; and in October 2017, Greene was able to clean out his garage.  (Tr. at 654, 2350, 2446).  Although Greene reported experiencing pain after completing some of these tasks (*id.* at 2350, 2446), the record

does not indicate the pain was disabling.

Second, as an additional reason for discounting Greene's testimony regarding the effects of his mental impairments, the ALJ noted that testimony was inconsistent with Greene's presentation, reported functioning, and receptivity to therapeutic inventions, as documented in his mental health treatment records. (*Id.* at 25). This was an appropriate consideration in evaluating Greene's subjective symptoms testimony. *See* 20 C.F.R. § 404.1529(c)(2) and (3); SSR 16-3p. The mental health treatment records that constituted substantial evidence supporting the ALJ's decision to discount Dr. Ruffing's opinions also constitute substantial evidence supporting the AJL's decision to discount Greene's testimony regarding the subjective symptoms associated with his mental impairments. Additionally, as noted by the ALJ, Greene was able to assume a parental role in relation to his nephew for some period of time in or around February and March 2016, which he reported enjoying, and was able to take a family vacation in June 2016. (*Id.* at 2551, 2555, 2557-58). Although there was conflict associated with the endeavors, Greene's ability to participate in them supports the ALJ's negative credibility finding.

Third, the ALJ determined the medical record showed conservative treatment recommendations that did improve many of Greene's subjective symptoms. (*Id.* at 25). This was an appropriate reason to discount Greene's testimony regarding his pain and other subjective symptoms. *See* 20 C.F.R. § 404.1529(c)(3)(iv) and (v);

SSR 16-3p; *Draughton v. Comm'r, Soc. Sec. Admin.*, 706 F. App'x 517, 520 (11th Cir. 2017) (holding conservative nature of claimant's treatment supported ALJ's decision to discredit claimant's testimony regarding his pain); *Doig v. Colvin*, 2014 WL 4463244, at *4 (M.D. Fla. Sept. 10, 2014) ("The meaning of 'conservative treatment' is well known; it includes any mode of treatment which is short of surgery.  Treatment with medication, whether prescribed or over-the-counter, and steroid injections is still conservative treatment, i.e., not surgery.").[5]

Moreover, it is supported by substantial evidence.  Greene's rheumatologist consistently prescribed exercise to treat Greene's arthritis and fibromyalgia.  (Tr. at 777, 795, 797, 798, 800, 802, 814, 2265, 2284, 2359, 2373, 2374, 2382, 2432).  During a February 20, 2014 appointment, Greene's rheumatologist discussed with Greene that he was unlikely to see very good improvement of his symptoms without exercise.  (*Id.* at 800).  In a treatment note dated July 10, 2015, Greene's rheumatologist went so far as to state, "Really the only thing that will probably help

---

[5] Greene cites *Henry v. Comm'r of Soc. Sec.*, 803 F.3d 1264 (11th Cir. 2015), to support an argument conservative treatment was not an appropriate reason for discounting his subjective symptoms testimony, absent further factual development.  (Doc. 13 at 17-18).  In *Henry*, the Eleventh Circuit held an ALJ's negative credibility determination was not supported by substantial evidence because the ALJ failed to fully and fairly develop the record as to the claimant's financial ability to pursue a more rigorous course of treatment.  802 F.3d at 1269.  "Instead, the ALJ focused on the absence of aggressive treatment as a proxy for establishing disability."  *Id.*  By contrast, here, the ALJ did not discount Greene's subjective symptoms testimony because he did not seek anything more than conservative treatment but, rather, because his treating physicians consistently recommended conservative treatment, and such conservative treatment improved his symptoms.  Accordingly, Greene's reliance on *Henry* is unavailing.

him is to exercise." (*Id.* at 777). When Greene complied with this conservative treatment recommendation, such as by participating in water therapy, he noted meaningful improvement of his symptoms. Greene attended water therapy regularly between August and October 2016 and, upon discharge, reported having "a lot less pain since coming for skilled PT interventions" and "doing much better overall just because of physical therapy." (*Id.* at 2360, 2362-63, 2365-67).

An oncologist prescribed non-steroidal anti-inflammatory drugs ("NSAIDs") to treat Greene's arthritis in March 2014 and noted in March 2015 that the condition remained under good control with this treatment plan. (*Id.* at 934, 948).[6] The oncologist also prescribed monthly B12 shots in March 2014 to address Greene's fatigue, and Greene reported in March 2015 that his fatigue had improved with this treatment plan. (*Id.* at 934, 948).

Greene regularly received pain management care from Tennessee Valley Pain Consultants ("TVPC") between February 2014 and November 2016. The treatment he received at TVPC included steroid injections, nerve blocks, and narcotic pain medication. The record indicates these treatment modalities provided Greene with significant relief from his neck, shoulder, and back pain. (*Id.* at 1004, 1007, 1015, 1026-27, 1039, 1046, 1063, 1074, 1079, 1086, 1113, 1476, 1499-1500, 1510, 1513,

---

[6] Greene was referred to an oncologist for evaluation of a mass in his neck that did not prove cancerous.

1534-35, 1546, 1552, 2021, 2040, 2082, 2101, 2131). For example, treatment notes dated February and July 2014 state Greene had done "very well" with steroid injections in his neck, which allowed him to be "much more active" and "engage [in] life much more," and that he was "pleased" with the results. (*Id.* at 1079, 1113). A treatment note dated November 2014 states the last steroid injection Greene received in his back gave him "excellent relief overall" and that he was "very pleased with his results and his ability to be more active." (*Id.* at 1046). A treatment record dated July 2015 notes the last steroid injection Greene received in his back "helped him quite a bit" and "allowed him to be much more active" and that he consequently experienced "less pain overall." (*Id.* at 1007). A treatment note dated April 2016 states Greene had "always done very well" with steroid injections in his neck. (*Id.* at 2021). A treatment note dated June 2016 states Greene experienced "very good relief" from steroid injections in his back, which allowed "better standing, lifting, walking, and daily activities." (*Id.* at 2040). Finally, when Greene returned to TVPC in November 2017 after a hiatus of approximately one year, he reported experiencing a 75% reduction in his neck pain for five months after his last steroid injection, that he was "very pleased overall," that his function status was better, and that his qualify of life was "much improved." (*Id.* at 2131). Additionally, Greene reported narcotic pain medication was working well to manage his pain, until TVPC ceased prescribing it in January 2015 after Greene twice tested positive for

tetrahydrocannabinol ("THC"), the main psychoactive compound in cannabis.  (*Id.* at 1039, 1063, 1074, 1086).

Greene regularly received pain management care from Alabama Pain Center, also known as Covenant Pain Center, between December 2015 and November 2017. His treatment at this pain center included steroid injections and narcotic pain medication.  He reported experiencing good relief from the medication.  (*Id.* at 1912, 1914, 1916, 1918, 1920, 1922, 1924, 1927, 1931, 1936, 1938, 1940, 1942, 1946, 1960, 1970, 1973, 1997, 2000).  For example, in January and July 2016, he reported experiencing a 60% reduction in pain for 3 hours; in November 2016 and March 2017, he reported experiencing a 70% reduction in pain for between 4 and 5 hours; in May 2017, he reported experiencing an 80% reduction in pain for 5.5 hours; and in November 2017, he reported experiencing a 60% reduction in pain for 4 hours. (*Id.* at 1910, 1936, 1946, 1970, 2000).  A treatment note dated May 2017 states Greene had experienced a "fairly dramatic improvement of his low back pain and right buttock/hip/thigh pain with lumbar facet injection therapy," reporting a 90% reduction in pain since an injection earlier that month that was lasting.  (*Id.* at 1972).

As a fourth reason for discrediting Greene's subjective symptoms testimony, the ALJ noted Greene's doctors did not note they observed him to be in the moderately severe-to-severe pain he alleges.  (*Id.* at 23, 27).  This was an appropriate reason to discount Greene's testimony regarding his pain and other subjective

22

symptoms. *See* 20 C.F.R. § 404.1529(c)(2) and (3); SSR 16-3p; *Duval v. Comm'r of Soc. Sec.*, 628 F. App'x 703, 711-12 (11th Cir. 2015) (holding ALJ properly discredited claimant's testimony regarding his degree of impairment where that testimony was not consistent with objective medical evidence); *Hernandez v. Comm'r of Soc. Sec.*, 523 F. App'x 655, 657 (11th Cir. 2013) (same).

Moreover, it is supported by substantial evidence. Although Greene frequently complained of pain to his treating physicians, those physicians consistently noted during the relevant period that Greene did not appear to be in distress and, upon performing physical exams, documented either normal musculoskeletal findings or only mil-to-moderate abnormalities. (Tr. at 543, 545, 593, 596, 614, 616, 618, 620, 626, 628, 1000-01, 1005, 1016-17, 1023, 1028, 1035-36, 1040-41, 1050, 1055, 1059, 1064-65, 1070-71, 1075-76, 1083, 1087, 1091-92, 1096, 1102-03, 1479, 1495-96, 1500-01, 1514, 1521, 1530-31, 1536, 1549, 1723, 1783, 1842, 1950, 1956, 1966, 1979, 1991, 2024-25, 2031, 2043, 2050, 2063, 2068, 2074, 2085-86, 2092, 2104, 2111, 2121-22, 2128, 2134-35, 2142, 2157, 2159-60, 2164-65, 2202, 2212, 2223, 2227, 2248).

Greene spends much of his initial and reply briefs citing evidence he claims supports: (1) a determination his Meniere's disease, narcolepsy, hip problems, and borderline personality disorder are severe impairments; (2) the opinions offered by Ruffing and Darnell; and (3) his subjective symptoms testimony. However, as

stated, the relevant question is not whether evidence supports Greene's arguments but whether substantial evidence supports the ALJ's determination. *See Moore*, 405 F.3d at 1213 (discussing "narrowly circumscribed" nature of appellate review); *Henry*, 802 F.3d at 1268 ("[W]e review the ALJ's decision for substantial evidence, but neither make credibility determinations of our own nor re-weigh the evidence."). Moreover, " 'there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the AJL's decision . . . is not a broad rejection which is not enough to enable [a reviewing court] to conclude that the AJL considered [the claimant's] medical condition as a whole.'" *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) (citing *Dyer*, 395 F.3d at 1211). In this case, a thorough review of the ALJ's opinion and the entire evidentiary record confirms the ALJ applied the proper legal standards, considered Greene's medical condition as a whole, and that substantial evidence supports his decision.

## V. Conclusion

Having reviewed the administrative record and considered all the arguments presented by the parties, the undersigned finds the Commissioner's decision is due to be **AFFIRMED**.  A separate order will be entered.

**DONE** this 6th day of October, 2020.

STACI  G. CORNELIUS
U.S. MAGISTRATE JUDGE